UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVETTE JONES, | |
| Plaintiff, | No. 22 C 1945 |
| v. | Judge Thomas M. Durkin |
| MICHAEL REGAN, Administrator of the U.S. Environmental Protection Agency, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Evette Jones alleges that her employer, the U.S. Environmental Protection Agency, violated Title VII when it disciplined her in retaliation for complaints she made about the hiring and conduct of another employee. The EPA has moved for summary judgment. R. 27. That motion is granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948

(7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

In September 2016, Jones was assigned to a hiring committee with two other EPA employees named Ruth Woodfork and Carol Ropski. Ropski was the committee member with ultimate authority to make the hiring decision.

One of the three candidates for employment, named Bertanna Louie, was at that time an intern in the same office as Jones. Jones testified that Woodfork coached Louie to help her perform well in the interview process by giving her the questions she would be asked in advance. Jones alleges Woodfork did this both at the request of another EPA employee who was Louie's friend, and because Louie had threatened to file a discrimination claim against the EPA if she didn't get the job. Before the interview, Jones reported this coaching to her supervisor, Cecelia Moore. According to Jones, Moore justified that coaching by saying "white people do it." Jones, Moore, Louie, and the two other applicants are all Black.

Despite Moore's purported justification, the interview questions were changed in response to Jones's report of the coaching, and Louie did not perform well during

the interview. Ropski did not hire Louie for the job. However, Louie was eventually hired for a different position in the office.

Louie blamed Jones for the fact that she didn't get the first job, so in October 2016, she filed a harassment complaint against Jones with the EPA's Equal Employment Opportunity ("EEO") office. A May 2017 report of the investigation found Louie's harassment allegations lacked evidence but found that Jones had gossiped about Louie. Jones was instructed to stay away from Louie and her workspace and to stop "gossiping" or "making any unbecoming statements about employees."

Louie then filed a second complaint alleging that Jones had "glared" at her in November 2016. After a supplemental investigation, this complaint was sustained in September 2017 with a finding that Jones had committed "conduct unbecoming of an EPA supervisor."

Jones responded to each of these investigations with letters from her attorney. These letters included allegations that Louie was harassing Jones. The first letter dated June 8, 2017, accused Louie of "lashing out" at Jones after Louie wasn't selected for the first job. The letter also complained that Louie "goes out of her way to linger" near Jones.

The second letter dated September 22, 2017, alleged that the supplemental investigation constituted "continued discrimination" against Jones. The letter also contended that Louie's choice to accept a new job closer to Jones was evidence that

3

Louie's allegations were insincere. The September 22 letter also criticized EPA "management" for "ignoring" Jones's claims that Louie was harassing her.

As a result of the two findings of unprofessional conduct against Jones, she was issued a written reprimand in October 2017. Later in October 2017, Jones was given a performance review rating one level lower than she had normally received in the past. Jones's supervisor explained to her that this lower rating was due to the incidents related to Louie, as well as a separate incident in which Jones had potentially disclosed a different intern's medical information.

Jones alleges that the written reprimand and the lower performance review rating were retaliation for her complaints about Louie's coaching and the complaint she made about Louie's harassment in the letters sent by her attorney. She also alleges that her supervisors retaliated against her by not investigating her complaints about Louie's alleged harassment. However, after Jones filed a formal complaint in November 2017 with the EPA's EEO office, a formal investigation regarding Jones's complaints was eventually opened in March 2018. That investigation was closed on December 9, 2020, with findings that Jones's allegations about Louie were not supported by the evidence. In the meantime, Jones had filed a charge with the EEOC in February 2018, which underlies the complaint in this case.

**Analysis**

Title VII prohibits employers from retaliating against an employee who has "opposed" an "unlawful unemployment practice" under Title VII or who "has made a charge, testified, assisted, or participated in" a Title VII investigation, proceeding, or

4

hearing. *See* 42 U.S.C. § 2000e-3(a). Here, Jones alleges that the unlawful employment practice she opposed was the coaching Louie received. Jones argues that the coaching was "discriminatory," *see* R. 46 at 14, presumably because she alleges that Moore justified that coaching by saying "white people do it." Jones, however, does not expressly make this argument anywhere in her briefs.

This is likely because there is no evidence that Louie's coaching constituted an "unlawful employment practice" under Title VII. Under Title VII it "shall be an unlawful employment practice for an employer":

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e-2. Moore's alleged assertion that Louie was coached because of her race is not evidence that she or the other applicants (1) were not hired because of their race, or (2) were adversely affected because of their race. Indeed, Louie's receipt of the coaching did not ultimately result in her receiving the job, and one of the other Black applicants was hired instead. These facts simply do not describe an "unlawful employment practice" for purposes of Title VII.

Moreover, there is no evidence that Jones believed Louie's coaching constituted racial discrimination. The affidavit Jones submitted as part of her initial

5

administrative complaint described the coaching as a "prohibited personnel practice." And she repeated this allegation at her deposition in 2019. Perhaps it is true that the coaching violated EPA personnel regulations. But Jones's affidavit says nothing about the coaching being *racially* discriminatory. Instead, she stated in the affidavit that she complained about the coaching because "none of the other candidates received that information." R. 43-1 at 69. And in 2019, Jones similarly testified that the coaching was "discriminatory against the other applicants." *See* R. 43-2 at 655 (30:6-10). But in neither her affidavit not her deposition testimony did Jones state that Louie or the other candidates were being discriminated against based on their race or any other characteristic protected by Title VII. And it makes sense that Jones wouldn't make such an allegation considering all three candidates were Black. Jones's reference to Moore's statement about "white people" adds further explanation to why Jones believed Moore' tolerance of the coaching was inappropriate. But that does not make the coaching a Title VII violation.

    Assuming, as the Court must, that Jones's affidavit and deposition testimony are accurate accounts of the complaint she made to Moore and Moore's response, no reasonable jury could find that this is evidence that Jones complained about *racial* discrimination and not mere personal favoritism. First, Jones simply has never expressly testified that she made a complaint of "racial" discrimination. The word "discrimination" alone does not necessarily imply *racial* discrimination. And her argument now that racial discrimination is what is meant is belied by the statements in both her 2018 affidavit and 2019 deposition indicating that she was not concerned

6

with race but fairness to the other applicants in the job interview process. *See* R. 43-1 at 69 (stating that she complained because "none of the other candidates received that information").

Second, the factual context of Jones's complaint belies her argument that it was a complaint about racial discrimination. It is undisputed that the other candidates Louie was competing against were also Black. In that context, no reasonable juror would believe that Jones's use of the word "discrimination" was intended to allege *racial* discrimination rather than mere personal favoritism. Indeed, according to Jones's testimony, it was Moore, who in response to Jones's complaint, injected a racial element into her justification for the preferential treatment given to Louie. But Moore's comment about race is not evidence that Jones complained about racial discrimination.

The evidence shows only that Jones complained about preferential treatment towards Louie. But even assuming the coaching Louie received gave her an unfair advantage, it cannot constitute "an unlawful employment practice" under Title VII because there is no evidence that it has "a connection to a protected class." *Skiba v. Ill. Centr. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018). Contrary to Jones's claim, personal favoritism is not prohibited by Title VII. *See Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 733 (7th Cir. 2002) ("Title VII does not, however, prevent employers from favoring employees because of personal relationships."). And because there is no evidence that the coaching was a Title VII violation, Jones's complaint about the coaching is not protected by Title VII, and any retaliation based on her

7

complaint about the coaching cannot constitute a violation of Title VII. *See id.* ("Statutorily-protected activity requires more than simply a complaint about some situation at work, no matter how valid that complaint might be.").

Jones also claims that her discipline was retaliation for the complaints she made about Louie's alleged harassment of Jones. But as discussed, for the alleged retaliation to be actionable under Title VII, Jones had to have complained about conduct prohibited by Title VII. And there is no evidence that Louie's alleged harassment of Jones was race-based. Rather, the only reasonable inferences to be drawn from the evidence are that Jones and Louie had a mutual dislike for each other. And personal animus, no matter how severe, is not a basis for a Title VII claim if there is no evidence that it is connected to a protected characteristic. *See Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011) (affirming summary judgment for the defendant when the evidence suggested that "the conduct was the result of personal animus . . . rather than gender-based animus"); *Copeling v. Illinois State Toll Highway Auth.*, No. 12 C 10316, 2014 WL 3687255, at *5 (N.D. Ill. July 24, 2014) (granting summary judgment to the defendant because "[t]here is nothing in the summary judgment record . . . that would allow a reasonable jury to conclude that racial discrimination motivated those actions."); *Prince v. Rice*, 570 F. Supp. 2d 123, 134 (D.D.C. 2008) ("personal animus . . . alone is not enough to establish discrimination on the basis of race").

## Conclusion

Therefore, Defendant's motion for summary judgment [41] is granted.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 3, 2025